UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR OMNI NATIONAL BANK,<br><br>Plaintiff,<br><br>v.<br><br>EVEREST REINSURANCE HOLDINGS, INC.,<br><br>Defendant. | Misc. Case No. 12-MISC-0381<br><br>[Case No. 1:12-cv-01103-RLV Pending in the United States District Court for the Northern District of Georgia]<br><br>**PROGRESSIVE CASUALTY INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR OMNI NATIONAL BANK'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM NON-PARTY EVEREST REINSURANCE HOLDINGS, INC.** |

Jonathan R. Harwood
**Traub Lieberman Straus & Shrewsberry LLP**
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
Tel: (914) 347-2600 ext. 7006

Of Counsel:

Lewis K. Loss
Matthew J. Dendinger
**Loss, Judge & Ward, LLP**
Suite 450
1133 21st Street, NW
Washington, DC 20036
Tel: 202-778-4060

*Attorneys for Progressive
Casualty Insurance Company*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

I.   INTRODUCTION ........................................................................................................... 1

II.  FACTUAL BACKGROUND .......................................................................................... 1

III. ARGUMENT ................................................................................................................... 6

    A. The FDIC-R Should Not Be Permitted to Circumvent the U.S. District Court for the Northern District of Georgia ............................................................................... 6

    B. The FDIC-R Is Not Entitled to Discover Reinsurance Documents Protected by the Attorney-Client Privilege or Work Product Doctrine ...................................... 9

IV.  CONCLUSION .............................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Allocco Recycling, Ltd. v. Doherty,*
  220 F.R.D. 407 (S.D.N.Y 2004) .................................................................................... 9

*American Medical Systems, Inc. v. National Union Fire Insurance Co. of Pittsburgh, Pa.,*
  No. CIV. A. 98-1788, 1999 WL 781495 (E.D. La. Sept. 29, 1999) ............................. 8

*American Safety Casualty Insurance Co. v.City of Waukegan, Illinois,*
  No. 07-C-1990, 2011 WL 180561 (N.D. Ill. Jan. 19, 2011) ...................................... 11

*FDIC, as Receiver of Silverton Bank, N.A. v. Bryan,*
  No. 1:11-cv-02790-JEC-GCB, Slip Op. (N.D. Ga. November 28, 2012) ............... 7, 9

*Flintkote Co. v. General Accident Assurance Co. of Canada,*
  No. C 07-1827, 2009 WL 1457974 (N.D. Cal. May 26, 2009) ................................... 8

*Great American Surplus Lines Insurance Co. v. Ace Oil Co.,*
  120 F.R.D. 533 (E.D. Cal. 1988) ............................................................................... 11

*Great Lakes Dredge & Dock Co. v. Commercial Union Assurance Co.,*
  159 F.R.D. 502 (N.D. Ill. 1995) ................................................................................... 8

*Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.,*
  117 F.R.D. 283 (D.D.C. 1986) ..................................................................................... 8

*Leksi, Inc. v. Federal Insurance Co.,*
  129 F.R.D. 99 (D.N.J. 1989) ........................................................................................ 8

*Minnesota School Boards Association Insurance Trust v. Employers Insurance*
  *Co. of Wausau,* 183 F.R.D. 627 (N.D. Ill. 1999) .................................................. 10, 11

*Potomac Electric Power Co. v. California Union Insurance Co.,*
  136 F.R.D. 1 (D.D.C. 1990) .................................................................................. 8, 11

*Progressive Casualty Insurance Co. v. FDIC,*
  926 F. Supp. 2d 1337 (N.D. Ga. 2013) ........................................................................ 2

*Railroad Salvage of Connecticut, Inc. v. Japan Freight Consolidators, Inc.,*
  97 F.R.D. 37 (E.D.N.Y. 1983) .............................................................................. 10, 11

*Republic Asset Management v. Royal Surplus Lines Insurance Co.,*
  No. 600476/2005, 2006 N.Y. Misc. LEXIS 9337 (N.Y. Sup. Ct. June 19, 2006) ....... 8

*Royal Surplus Lines Insurance Co. v. Sofamor Danek Group, Inc.*,
   190 F.R.D. 463 (W.D. Tenn. 1998) ........................................................................... 10

*Stanziale v. Pepper Hamilton LLP*,
   No. M8-85 (Part I) (CSH), 2007 WL 473703 (S.D.N.Y. Feb. 9, 2007) ...................... 9

*Transcor, Inc. v. Furney Charters, Inc.*,
   212 F.R.D. 588 (D. Kan. 2003) .................................................................................. 9

*United States Fire Insurance Co. v. General Reinsurance Corp.*,
   No. 88 CIV. 6457 (JFK), 1989 WL 82415 (S.D.N.Y. July 20, 1989) ...................... 10

**State Cases**

*Brown v. Blackmon*,
   272 Ga. 435, 530 S.E.2d 712 (Ga. 2000) ................................................................... 7

*Karla Industries, Inc. v. Insurance Co. of the State of Pennsylvania*,
   685 N.Y.S.2d 685 (N.Y. App. Div. 1999) .................................................................. 8

**Federal Rules**

Fed R. Civ. P. 26 ............................................................................................................... 9

Fed. R. Civ. P. 45 ........................................................................................................... 6, 9

I.  **INTRODUCTION**

The Federal Deposit Insurance Corporation, as Receiver for Omni National Bank ("FDIC-R"), and Progressive Casualty Insurance Company ("Progressive") are engaged in coverage litigation pending before Judge Robert Vining in the United States District Court for the Northern District of Georgia. In that action, the FDIC-R has served Progressive with extensive discovery requests, including requests for documents relating to Progressive's reinsurance and its communications with its reinsurers. Progressive has objected to that discovery on multiple grounds, including relevance, attorney-client privilege, and the work product doctrine. To date, the FDIC-R has not pursued that discovery further from Progressive. Instead, it has served a series of subpoenas on Progressive's reinsurers, including Everest Reinsurance Holdings, Inc. ("Everest Re"), seeking many of the same documents.

There is direct authority in the Northern District of Georgia rejecting the FDIC's effort, as a receiver of another failed bank, to obtain just the sort of reinsurance information the FDIC-R seeks here. The FDIC-R should not be permitted to side-step this authority by the expedient of issuing subpoenas to Progressive's reinsurers. The substantial issues concerning whether and to what extent, if at all, the FDIC-R is entitled to discover reinsurance documents is properly decided by the court in which the coverage action is pending, not in miscellaneous motion practice directed against third parties before a different court.

II. **FACTUAL BACKGROUND**

On March 27, 2009, Omni National Bank ("Omni") was closed, and the FDIC-R was appointed as receiver. (FDIC Ex. 1, ¶ 4). On June 8, 2009, the FDIC-R sent a demand letter to certain former Omni officers and directors alleging that their wrongful acts had caused Omni to incur substantial losses on loans approved by Omni. (Ex. A, Declaration of Matthew J. Dendinger ("Dendinger Decl."), ¶ 13). The officers and directors sought coverage under the

D&O policy that Progressive issued to Omni (the "Progressive Policy"). (*Id.*, ¶ 14). By letter dated July 16, 2009, Progressive, through outside counsel, informed the officers and directors that the FDIC-R's claim presented substantial coverage issues under the Progressive Policy. (*Id.*, ¶ 15). On March 16, 2012, the FDIC-R filed a civil action against certain former officers and directors of Omni (*FDIC-R v. Klein, et al.*, No. 1:12-cv-00896-RLV (N.D. Ga.), Docket Entry ("DE") 1). Progressive thereafter filed a declaratory judgment action in the Northern District of Georgia on March 30, 2012, seeking a declaration that no coverage exists for the FDIC-R's claims against the former officers and directors (*Progressive v. FDIC-R, et al.*, No. 1:12-cv-01103-RLV) (the "Coverage Action") (DE 1). Among the defenses to coverage asserted by Progressive in the Coverage Action are the applicability of the Progressive Policy's "Insured vs. Insured Exclusion" and a carve-out from the definition of Loss that bars coverage for unrepaid loans (the "Loan Loss Carve-Out").[1] (*Id.*, ¶¶ 45–60).

Consistent with its view that the Coverage Action presents dispositive issues that could be addressed as a matter of law, Progressive filed a prompt motion for summary judgment, which was granted in part on January 4, 2013. *See Progressive Cas. Ins. Co. v. FDIC*, 926 F. Supp. 2d 1337 (N.D. Ga. 2013). The court granted summary judgment in favor of Progressive with respect to a number of alleged acts that occurred outside of the policy period but determined that the FDIC-R should be allowed certain discovery. *Id.* at 1341–42. The court stated that the FDIC-R "should be permitted to proceed in discovery into the areas identified in the Lana Robertson Declaration" (the "Robertson Declaration"), which the FDIC-R had submitted in opposing the motion for summary judgment. *Id.* at 1342.

---

[1] The FDIC-R refers to the Loan Loss Carve-Out as the "Unpaid Loan Carve Out."

The Robertson Declaration specified five areas in which the FDIC-R sought discovery:

a. Progressive's marketing of its directors and officers liability insurance policies, and specifically its marketing relevant to the Insured v. Insured exclusion and the definition of "Loss;"

b. Progressive's representations to regulatory authorities regarding the scope of coverage of its directors and officers liability insurance policies, and specifically its representations relevant to the Insured v. Insured exclusion and the definition of "Loss;"

c. The drafting and underwriting histories of Progressive's directors and officers liability insurance policies, and specifically the drafting and underwriting histories relevant to the Insured v. Insured exclusion and the definition of "Loss;"

d. Progressive's representations to the insureds under its directors and officers liability insurance policies, including but not limited to Omni's former directors and officers, regarding the scope of the policies' coverage, and specifically its representations relevant to the Insured v. Insured exclusion and the definition of "Loss;" and

e. Progressive's interpretation and construction of the scope of coverage under its directors and officers liability insurance policies, and specifically its understanding relevant to the Insured v. Insured exclusion and the definition of "Loss."

(FDIC Ex. 1 ¶ 8). The Robertson Declaration did not specify that the FDIC-R sought to discover reinsurance information.

Notwithstanding its failure to include reinsurance information as a necessary area of discovery in the Robertson Declaration, the FDIC-R has issued multiple document requests to Progressive seeking extensive reinsurance information. These include requests for "[a]ll documents reflecting the purchase, placement or ceding of any reinsurance by you that relate to the Policy, including all status reports provided by you to such reinsurance companies and memoranda concerning meetings with reinsurers" and "[a]ll documents constituting, reflecting, or describing any communications with any reinsurer about the Claims." (*See* Dendinger Decl., Ex. 1, ¶¶ 16, 27).

Progressive objected to these requests on a number of grounds, including relevance and burdensomeness. Importantly for purposes of its opposition to the FDIC-R's instant motion, Progressive objected that the requests sought documents protected by Progressive's attorney-client privilege or work-product protection. (Dendinger Decl., Ex. 2, ¶¶ 16, 27). The FDIC-R has not filed a motion to compel production of these documents from Progressive, and the Court in the Coverage Action has not had an opportunity to address Progressive's objections.

Instead, in early October 2013, the FDIC-R served document subpoenas on Progressive's reinsurers, Axis Reinsurance Company, Transatlantic Reinsurance Company, Everest Re, and Allied World Reinsurance Management Company, seeking reinsurance documents it already had requested from Progressive. (Dendinger Decl., Exs. 3–6).[2] Those subpoenas, which appear to be identical, are sweeping. Specifically, the FDIC-R seeks from Everest Re:

1. All agreements or reinsurance policies involving Everest Re that relate to the Policy.

2. All Documents relating to Progressive's or ABMI's [American Bankers Mutual Insurance Ltd.] purchase and placement of reinsurance that relates to the Policy.

3. All Documents referring or relating to Progressive's, ABAIS's [ABA Insurance Services Inc.], or ABMI's notice and claims to You or any reinsurer in connection with the FDIC-R's Claims.

4. All Documents referring or relating to whether any Professional Liability Insurance Policy covers any claims by the FDIC acting as receiver for a failed bank.

5. The complete contents of Your claims file(s) for Progressive's, ABAIS's, or ABMI's claims for reinsurance relating to the FDIC-R's Claims.

6. All Documents relating to Your consideration, evaluation, and investigation of Progressive's, ABAIS's, or ABMI's claims for reinsurance relating to the FDIC-R's Claims.

---

[2] The FDIC-R's Motion to Compel directed against Axis Reinsurance Company and Transatlantic Reinsurance Company is pending before this Court as Misc. Case No. 13-MISC-0380, and Progressive has filed a similar opposition brief in that action. Progressive respectfully submits that the FDIC's near identical motions against the three reinsurers should be jointly decided to avoid inconsistent rulings. The FDIC-R has not filed a Motion to Compel directed against Allied World Reinsurance Management Company.

7. All Documents relating to Your consideration, evaluation, and investigation of Progressive's, ABAIS's, or ABMI's claims for reinsurance relating to tort claims against the former directors and officers of a failed bank by the FDIC acting as receiver for the failed bank.

8. All Documents reflecting or relating to any payments or advance You made in connection with the FDIC-R's Claims including, but not limited to, reinsurance billing statements.

9. All Documents reflecting or relating to any payments or advances You made in connection with any tort claims by the FDIC acting as receiver for a failed bank against former directors or officers of the failed bank.

10. All Documents relating to any lawsuit, litigation, or arbitration involving Progressive, ABAIS, or ABMI, and any reinsurer relating to an Insured v. Insured Exclusion, a Regulatory Exclusion, and/or the Unpaid Loan Carve Out.

11. All Documents relating to any lawsuit, litigation, or arbitration involving Progressive, ABAIS, or ABMI, and any reinsurer relating to any tort claims by the FDIC against directors or officers of a bank.

12. All Documents relating to any Professional Liability Insurance Policy sold by Progressive to Omni including, but not limited to, Documents reflecting audits of Omni by Progressive.

13. All Documents relating to the FDIC-R's Claims.

14. All Documents reflecting or relating to any Communication (including, without limitation, Communications involving Progressive, ABAIS, ABMI, Everest Re, or any reinsurer) relating to Omni, any Professional Liability Insurance Policy sold to Omni, or the FDIC-R's Claims.

15. All Documents reflecting or relating to any Communication (including, without limitation, Communications involving Progressive, ABAIS, ABMI, Everest Re, or any reinsurer) relating to any tort claims by the FDIC acting as receiver for a failed bank against former directors or officers of the failed bank.

16. All Documents relating to Insured v. Insured Exclusions, Regulatory Exclusions, or Unpaid Loan Carve Outs including, without limitation, all Documents relating to the drafting history of Insured v. Insured Exclusions, Regulatory Exclusions, or Unpaid Loan Carve Outs.

17. All Documents relating to the meaning, construction, interpretation, or application of the language used in Insured v. Insured Exclusions, Regulatory Exclusions, or Unpaid Loan Carve Outs.

18. All Documents relating to any attempt by Progressive to add a Regulatory Exclusion to any Professional Liability Insurance Policy, and all Documents relating to circumstances

under which a Regulatory Exclusion is omitted, removed, or included in the Professional Liability Insurance Policy.

19. All Documents relating to coverage under Professional Liability Insurance Policies for claims by the FDIC acting as receiver for a failed bank.

20. All Documents relating to coverage under Professional Liability Insurance Policies for claims by receivers, trustees, or debtors-in-possession.

21. All Documents relating to the meaning, construction, interpretation, and/or application of any policy terms relating to insurance coverage for tort claims relating to loans, leases, or extensions of credit in any Professional Liability Insurance Policy.

22. All Documents to or from the American Bankers Association relating to coverage for tort claims under Professional Liability Insurance Policies.

23. All Documents to or from the American Bankers Association relating to the Insured v. Insured Exclusion, the Regulatory Exclusion, or the Unpaid Loan Carve Out.

(*Id.*, Ex. 5). Everest Re timely served written objections on the FDIC-R pursuant to Fed. R. Civ. P. 45(c)(2)(B) in an October 16, 2013 letter. (FDIC Ex. 5). Progressive also served written objections. (FDIC Ex. 4). On November 8, 2013, the FDIC-R filed its motion to compel against Everest Re.

### III. ARGUMENT

#### A. The FDIC-R Should Not Be Permitted to Circumvent the U.S. District Court for the Northern District of Georgia

The FDIC-R's memorandum includes the following section heading: "The FDIC-R Seeks Discovery Authorized By the Court." (FDIC-R Mem. at 9). Not so. As noted above, the Robertson Declaration did not even mention reinsurance information. However, the FDIC-R's overreach to assert that the Coverage Action Court has authorized the discovery it seeks here is an unintended acknowledgement that the issues presented by the FDIC-R's reinsurer subpoenas are best addressed by the Court in which the Coverage Action is pending. The FDIC-R seems not to want that. Although the FDIC-R has requested reinsurance discovery from Progressive and Progressive has objected to that discovery, the FDIC-R has not sought judicial guidance in

the Northern District of Georgia on the discoverability of reinsurance information. Instead, it proceeds here against Progressive's reinsurers.

It is not hard to imagine what is motivating the FDIC-R's tactical choices. Very recently, the Northern District of Georgia rejected the FDIC's efforts to compel discovery of reinsurance information in a case that is strikingly similar to the Coverage Action. In *Federal Deposit Ins. Corp, as Receiver of Silverton Bank, N.A. v. Bryan,* No. 1:11-cv-02790-JEC-GCB, Slip Op. at 26–27 (N.D. Ga. Nov. 28, 2012) ("*Silverton*") (Dendinger Decl., Ex. 7), the court considered the FDIC's effort as receiver of a failed bank to discover reinsurance information pertaining to a directors and officers liability insurance policy that had been issued to the failed bank. As here, the FDIC asserted that it was entitled to the discovery as part of its inquiry into the insurer's "understanding and interpretation of the Insured versus Insured Exclusion" and "definitions of various terms . . . such as 'Loss.'" *Id.* at 20. The Northern District of Georgia held that reinsurance agreements and reinsurance-related communications simply were not relevant to the interpretation of an insurance policy, even if ambiguous, because such communications could not show the mutual intent of the insurer and insureds—the only parties to the insurance policy. The court found that:

> As for any communications between Federal [Insurance Company] and any reinsurers, the FDIC asserts that such evidence is relevant because Federal may have made statements to reinsurers about the scope of coverage under the policy. Any such representations, however, would only show Federal's unilateral interpretation of the policy, not the mutual intention of the parties. *See Brown* [*v. Blackmon*], 272 Ga. [435] at 436, 530 S.E.2d [712] at 713 [Ga. 2000] (holding that evidence of a party's unilateral intent is irrelevant "in the absence of proof that such intention was shared by the other party"). Accordingly, I conclude that any reinsurance agreements or reinsurance-related communications are not relevant to the interpretation of the Federal Policy.

*Id.* at 27. Rather than attempt to address this authority, the FDIC-R seeks to side-step the Northern District of Georgia.[3] Indeed, if the reinsurance materials would be deemed not relevant under the law that will govern the Coverage Action, Georgia law, there is no basis or reason to allow their discovery in this Court.[4] The FDIC-R should be required to seek the reinsurance documents where the Coverage Action is pending—in the Northern District of Georgia.

---

[3] The FDIC-R cites (at page 16) to a decision issued by a Nevada magistrate judge, which the FDIC-R states "granted the motion to compel reinsurance documents" from Progressive. In fact, the court did not order the production of all of the reinsurance information the FDIC-R sought, and its order was based, in large part, on its view that the Insured vs. Insured exclusion and Loan Loss Carve-Out issues involve unsettled law. (FDIC Ex. 12, *Silver State* Order, at 13–14). However, it appears the Northern District of Georgia may well take a different approach insofar as those same provisions were at issue in the *Silverton* case and are at issue in the Coverage Action. As noted, the Northern District of Georgia in *Silverton* did not find anything about those issues warranted discovery of reinsurance information. Also, as noted in the Silver State Order, Progressive has voluntarily agreed to produce certain non-privileged communications with reinsurers concerning the Progressive policy. Progressive also has agreed that the FDIC-R may use discovery Progressive provides in one action in other similar actions involving Progressive. Thus, some of what the FDIC-R seeks from its reinsurers here will be provided by Progressive.

[4] Contrary to the discussion in the FDIC-R's motion, numerous courts across multiple jurisdictions, including but not limited to New York and Georgia, have concluded that reinsurance information is not relevant to an insurance coverage dispute with respect to the interpretation of the reinsured policy(ies). *See, e.g., Karla Indus., Inc. v. Ins. Co. of the State of Pa.*, 685 N.Y.S.2d 685, 685 (N.Y. App. Div. 1999) (affirming trial court's ruling that reinsurance documents were not relevant to coverage dispute); *Republic Asset Management, LLC v. Royal Surplus Lines Insurance Co.* No. 600476/2005, 2006 N.Y. Misc. LEXIS 9337, at *1 (N.Y. Sup. Ct. June 19, 2006) (relying on, *Karla, supra*, to hold reinsurance information sought in motion to compel was irrelevant and therefore not discoverable); *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 106 (D.N.J. 1989) (noting "very tenuous" relevance of reinsurance, which is "based on business considerations and not questions of policy interpretation," and thus ruling "production [of same] is not compelled"); *Indep. Petrochemical Corp. v. Aetna Cas. & Surety Co.*, 117 F.R.D. 283, 286–88 (D.D.C. 1986) (holding reinsurance "information [was] of very tenuous relevance, if any relevance at all" and thus not discoverable); *Am. Med. Sys., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. CIV. A. 98-1788, 1999 WL 781495, at *1–2 (E.D. La. Sept. 29, 1999) (reinsurance information not relevant to coverage dispute); *Flintkote Co. v. Gen. Acc. Assur. Co. of Can.*, No. C 07-1827, 2009 WL 1457974, at *5–6 (N.D. Cal. May 26, 2009) (denying motion to compel reinsurance documents and noting that "[g]enerally, courts have chosen to deny discovery of reinsurance because it was irrelevant and based solely on business considerations"); *Great Lakes Dredge & Dock Co. v. Commercial Union Assur. Co.*, 159 F.R.D. 502, 503–04 (N.D. Ill. 1995) (holding "the relevance of all documents relating to reinsurance is too attenuated to be discoverable under the relevant evidence standard of Rule 26"); *Potomac Elec. Power Co. v, Cal Union Ins. Co.*, 136 F.R.D. 1, 2 (D.D.C. 1990) (speculation that correspondence with reinsurer might contain admissions of coverage from insurer does not make communications with a reinsurer relevant and discoverable).

This Court undoubtedly always has had the discretion to transfer a dispute such as the instant one involving a subpoena issued to a nonparty to the court in which the underlying action is pending. *See Stanziale v. Pepper Hamilton LLP*, No. M8-85 (Part I) (CSH), 2007 WL 473703, at *7 (S.D.N.Y. Feb. 9, 2007). However, a very recent amendment to Fed. R. Civ. P. 45 effective December 1, 2013 further supports this Court deferring to the Northern District of Georgia. The amendment calls for all subpoenas to be issued by the court in which the action is pending (instead of the court in which compliance is required) and adds a new subsection, 45(f), expressly authorizing the transfer of a subpoena-related motion to the court in which the action is pending. These amendments and the accompanying Committee Note to Amended Rule 45 make clear that the amendment reflects the reality that the court in which the case is pending is often the better forum for resolving subpoena-related disputes, which often involve the proper scope of discovery, as here.[5]

### B. The FDIC-R Is Not Entitled to Discover Reinsurance Documents Protected by the Attorney-Client Privilege or Work Product Doctrine

Progressive should not be denied the opportunity to brief all of the issues presented by the FDIC-R's reinsurance discovery requests, which it properly could do in response to a motion based on the reinsurance discovery requests the FDIC-R has served directly on Progressive. However, even as the FDIC-R has chosen to move forward, Progressive has standing to urge that no party be ordered to produce material as to which Progressive may properly assert a privilege. *See, e.g., Allocco Recycling, Ltd. v. Doherty*, 220 F.R.D. 407, 410-11 (S.D.N.Y 2004) ("A party has standing to raise privilege objections to documents sought from a third party."); *see also, e.g., Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590 (D. Kan. 2003) (quotation

---

[5] In its footnote 10, the FDIC-R cites Fed R. Civ. P. 26(a)(1)(A)(iv). Not only does this rule apply only to parties, which Everest Re is not, but the *Silverton* court expressly considered and rejected the FDIC-R's reliance on this provision in the context of a declaratory judgment action such as the Coverage Action here. *Silverton*, at 26–27.

omitted) (finding the defendant had standing to oppose the plaintiff's attempt to subpoena defendant's financial records from a non-party); *Minnesota School Boards Ass'n Ins. Trust v. Employers Ins. Co. of Wausau*, 183 F.R.D. 627, 629 (N.D. Ill. 1999) (finding insurer had standing to oppose subpoenas issued to its reinsurer so it could assert its personal rights or privileges). *Royal Surplus Lines Ins. Co. v. Sofamor Danek Group, Inc.*, 190 F.R.D. 463, 468 (W.D. Tenn. 1998) (allowing defendant to oppose the plaintiff's motion to compel third party to assert its privilege in materials the third party possessed).

The Court, at a minimum, should deny the FDIC-R's motion with respect to all documents containing or reflecting Progressive's attorney-client privileged or work product protected materials. In light of the nature of the issues presented by Omni's failure and the FDIC-R's claim, Progressive has been represented by outside counsel in connection with the failure of Omni since June of 2009, when the FDIC-R first articulated its claim in a letter dated June 8, 2009. (Dendinger Decl., ¶¶ 12, 13). At the latest, Progressive reasonably anticipated litigation when it advised the directors and officers of its coverage position in a letter dated July 16, 2009.[6] (*Id.*, ¶ 15). From the time it retained counsel and anticipated litigation, Progressive's communications with Everest Re, or Everest Re's documents reflecting those communications, may reflect or include material subject to attorney-client privilege or work product protection.

Contrary to the FDIC-R's assertions, communications between insurers and their reinsurers remain protected from disclosure under the attorney-client privilege and work product protection of the insurer. *See, e.g., U.S. Fire Ins. Co. v. Gen. Reins. Corp.*, No. 88 CIV. 6457 (JFK), 1989 WL 82415, at *3 (S.D.N.Y. July 20, 1989) (citing *Railroad Salvage of Conn., Inc.*

---

[6] Indeed, given the nature of the issues presented by this matter, Progressive reserves the rights to assert an earlier date for its reasonable anticipation of litigation.

*v. Japan Freight Consolidators, Inc.*, 97 F.R.D. 37, 41 (E.D.N.Y. 1983)) ("Communications to one's insurer made as a consequence of pending litigation are privileged work product. . . . As such, shared communications among these entities retain their privileged status under the work product doctrine."). The common interest doctrine applies in the insurer-reinsurer relationship when their interests are aligned vis-à-vis the scope of coverage provided by a policy. *See, e.g., Great Am. Surplus Lines Ins. Co. v. Ace Oil Co.*, 120 F.R.D. 533, 538–39 (E.D. Cal. 1988) (finding attorney-client privilege not waived when attorney's communications were shared with reinsurer because reinsurer was "ultimately responsible for a substantial portion of any amount paid on the policy" and there was no evidence the reinsurer's interests were adverse); *Potomac Elec. Power Co.*, 136 F.R.D. at 3) ("This Court will not authorize a fishing expedition. In addition, the correspondence [with the reinsurer] may well constitute proprietary information or be protected by the attorney-client privilege or the work product doctrine."); *Minnesota School Boards Ass'n Ins. Trust*, 183 F.R.D. at 632) (holding "work product privilege is not waived when an insurer forwards work product information to its reinsurer" and collecting additional cases so holding); *Am. Safety Cas. Ins. Co. v. City of Waukegan, Ill.*, No. 07-C-1990, 2011 WL 180561, at *2 (N.D. Ill. Jan. 19, 2011) (finding reinsured sharing privileged documents with its reinsurers did not waive privilege because common interest doctrine applied).

Accordingly, even if this Court is inclined to grant the FDIC-R's motion in part, any such order should exclude production of documents that contain or reflect privileged communication or protected work product. This would include for example, communications between Progressive's counsel and its reinsurers, communications or analysis from counsel that Progressive shared with its reinsurers directly or indirectly, and any reinsurer-generated

- 11 -

documents that reflect these privileged or protected communications. The protected documents also include all documents that consist of or reflect Progressive's work product, e.g., all documents generated by Progressive or its counsel in anticipation of litigation and all reinsurer-generated documents that reflect Progressive work product shared with the reinsurers. Progressive has not waived and will not waive its privilege in all such documents.

## IV.   CONCLUSION

For the reasons set forth above, Progressive respectfully requests that the Court deny Plaintiff Federal Deposit Insurance Corporation as Receiver for Omni National Bank's Motion to Compel Production of Documents.

Dated:   December 3, 2013

Respectfully Submitted,

_____
Jonathan R. Harwood
**Traub Lieberman Straus & Shrewsberry LLP**
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
Tel: (914) 347-2600 ext. 7006

Of Counsel:

Lewis K. Loss
Matthew J. Dendinger
**Loss, Judge & Ward, LLP**
Suite 450
1133 21st Street, NW
Washington, DC 20036
Tel: 202-778-4060

*Attorneys for Progressive
Casualty Insurance Company*